## Case No. 8,057.

### LANG v. HOLBROOK.

[Crabbe, 179.] [2]

District Court, E. D. Pennsylvania.  Jan. 1, 1838.

DECISION OF FOREIGN COURT—SEAMAN'S WAGES—FORFEITURE — WAIVER OF FORFEITURE — DISCHARGE — MISCONDUCT — ABSENCE WITHOUT LEAVE.

1. Where a foreign court, not of admiralty, has decided a case on different principles from those here recognised, and leading to a different result from what would be here arrived at, though professedly deciding according to our law, this court is not concluded by such decision.

2. Any right may be waived; and, where that right is a severe penal forfeiture, a waiver will be considered with favor to the offender.

3. A seaman is entitled to wages up to the actual sale of the vessel, and they do not cease at the time of the date of the advertisement of the sale.

4. Where the credits in a seaman's account, as stated by the captain in his answer, are not objected to; there is no evidence to contradict the statement; and the amount credited differs but slightly from that claimed in the libel; the court will take the captain's credit as the proper one.

5. Where a seaman has misconducted himself and is discharged, but has been afterwards received again on board, his services accepted, and his wages allowed in his account, such misconduct cannot be alleged as a ground of forfeiture against him, though the shipping articles contain a clause that the reinstating of an offending seaman shall not be a waiver of the forfeiture.

6. But, in such a case, the seaman is chargeable on account of his absence without leave, as a deduction, especially when he has been serving, during such absence, on board another vessel; as also with losses or expenses which were the result of his misconduct.

This was a suit for wages. It appeared that the libellant [Richard Lang] shipped, as first mate, on board the ship John, of which the respondent [Benjamin Holbrook] was master, on the 12th August, 1836, at Philadelphia, for a voyage to St. Thomas and elsewhere; that in the shipping articles there was the following clause:—"Provided, that if any of the crew disobey the orders of the master, or other officer of the vessel, or absent himself at any time without liberty, his wages due at the time of such disobedience or absence shall be forfeited, and in case such person so forfeiting his wages shall be reinstated or permitted to do further duty, it shall not do away such forfeiture;" that the ship was detained for twenty-four hours on account of the absence of the libellant at the appointed time of sailing; that when he did come on board he was intoxicated; that he was repeatedly intoxicated, disobedient, and disorderly during the voyage; that he secreted the log-book during several weeks, during which time he made no entries in it, as it was his business to do, so that the only record of the proceedings, &c., of the ship during that time was a private journal kept by the captain; that at Port au Platt the libellant left the ship, without leave, for fifteen days, and during a part of that time was at work on board of another vessel; that he was again received on board of the ship; that at St. Thomas the captain applied to the authorities of the port, who confined the libellant for some days; that the libellant then commenced suit for his wages before a tribunal of the same place; that that tribunal decided the libellant to be indebted to the respondent in the sum of eighty-six dollars and sixty-four cents and costs; that the libellant never rejoined his ship, but was left at St. Thomas and sent home, a passenger, by the American consul there; and that this suit was

---

1 [Reprinted by permission.]
2 [Reported by William H. Crabbe, Esq.]

commenced, by capias, on the 21st July, 1837. The case came on for trial before Judge Hopkinson, on the 4th September, 1837. The record of the proceedings in the court of St. Thomas was produced.

C. Gilpin, for libellant.

Mr. Dunlap and J. C. Biddle, for respondent.

HOPKINSON, District Judge. The decision of this cause was very near involving in it the consideration of some very interesting and difficult questions, that is to say, 1st. The conclusiveness of the sentence of a foreign court of admiralty in a suit in personam; and 2d. The effect of a clause in the shipping articles that a restoration of a deserting or misbehaving seaman to the ship and his duties, should not be a waiver of the forfeiture of his wages incurred by his desertion or misconduct.

These questions have been examined with care and ability at the bar, but I think the evidence of the case relieves me from the necessity of deciding them, and reduces the case to some simple questions of fact and equity. It is impossible for me to consider the court in St. Thomas as a court of admiralty, although I should presume it had jurisdiction of the case. It does not profess to be a court of admiralty, but seems rather to have been a municipal tribunal. It is called "The Extra Court of St. Thomas;" the judge is called "The Mayor and Recorder of St. Thomas," and he convened and held the court "in the presence of two associates." There is nothing in the form or constitution of the court that bears any resemblance to a court of admiralty. The forms of proceeding are equally unlike those of a court of admiralty. There is no libel, no process, no answer. The whole proceeding is a singular one, and bears the evidence of its being in a municipal court, while it has none of the features of a court of admiralty, whose proceedings and judgments are to be respected by all the world, because they are all supposed to be parties.

If, then, there is not such a judgment as stands between this court and the merits and justice of the case; if we may look behind it, or rather into it, as it is set out on the record; the illegality and injustice of the judgment, according to all our notions of admiralty law, is so great that it is impossible to support it. Among other things, the forfeiture of wages is extended to wages earned after the alleged misconduct, going back even to the conduct of the mate at Philadelphia, and at Port au Platt, and forfeiting the wages on the subsequent voyage from Port au Platt to St. Thomas. Charges, too, against the libellant are allowed, contrary to the whole course of adjudication in this court. The contract was meant to be construed by our law, and the court at St. Thomas professes to do so, but has greatly mistaken it.

I feel myself at liberty to take up the case, notwithstanding the proceedings at St. Thomas. As to the clause in the shipping articles, that reinstating the offending seaman shall not be a waiver of the forfeiture. Suppose I give effect to this clause,—I must not, however, be understood as giving an opinion on it,—but for the present admitting it, still, this will not shut out the effect of other acts of waiver. Certainly, a party may waive any right; and when that right is a severe penal forfeiture, a waiver will be considered with favor to the offender. In this case there is another equity against the forfeiture. The captain, after the offence, continued to receive the services of the libellant as his mate, and hired no other in his place. This gives strength to the evidence to show that the captain, in fact,—not by the legal construction said to be prevented by the clause in the articles, but in fact, by his own act and deed,—did waive the forfeiture.

We have a regular account, made out by the captain, between the owner of the ship and the libellant, in which he gives him credit for the whole wages, from 12th August, 1836, to the sale of the vessel at St. Thomas on the 13th February, 1837, amounting in all to $132.60, differing but a few dollars from the amount claimed by the libellant in his account annexed to the libel. The difference is probably from a difference in the calculation of time, the one being to the advertisement of the vessel for sale, the other, perhaps, to the actual sale. If this be so, I think the latter is the true term. But as the account of the captain, in this respect, has not been objected to, and there is no direct evidence to contradict it, I shall take his credit as the proper one.

The claim of the libellant being thus ascertained to be $132.60, the only inquiry is, what debits are justly chargeable to him? The captain, in the account alluded to before, has made many, which result in producing a balance due from the libellant to the ship of $62.40. Without examining his charges separately and in detail, I will merely state the debits that, in my opinion, may be charged to him.

The evidence certainly shows great misconduct on the part of the libellant, and particularly in such an officer as the first mate. The greatest offence is habits of intemperance. This began in the Delaware; and the wonder is that the captain retained him, that he did not at once dismiss him. His keeping him affords ground for a belief that the account of his offences, of his drunkenness, insolence, and rioting, set forth in the answer, are greatly exaggerated. But, whatever the misconduct was, it cannot now be brought up as a ground of forfeiture, after receiving the man and his services, and allowing his wages in the account alluded to. Still, the ship has a right to charge him with his absence, by way—not of forfeiture, but—of deduction, especially as it is in proof that

he was working elsewhere during his absence; and also with losses or expenses which were the consequence of his misconduct, especially of his intemperance. But I will not, in making these allowances,—they being conjectural, in a great degree,—put out of the case the imprisonment and suffering of the libellant at St. Thomas.

The account stated on these principles will stand thus:

| | |
|---|---:|
| The libellant will be entitled to wages | $132 60 |
| Credit allowed to him by the captain.. | 10 50 |
| | $143 10 |

| | | |
|---|---:|---:|
| Amount of credit, brought forward... | | $143 10 |
| He is chargeable with: | | |
| His advance ............... | $26 00 | |
| Amount paid his wife....... | 48 00 | |
| Absence at Port au Platt, fifteen days ................ | 13 00 | |
| Loss by his intemperance, neglect, and misconduct....... | 20 00 | |
| Sundries furnished him, as by his own account.......... | 2 50 | |
| | | 109 50 |
| Balance due libellant............ | | $ 33 60 |

Decree for libellant for thirty-three dollars and sixty cents, and costs.